IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**DARLENE S. DONALD**                                                  **PLAINTIFF**

**VERSUS**                                   **CIVIL ACTION NO. 2:10cv227KS-MTP**

**ARROWOOD INDEMNITY COMPANY d/b/a
ROYAL & SUNALLIANCE, GENEX SERVICES, INC.,
NATIONAL HEALTHCARE RESOURCES, INC.,
KIMBERLY WILTSHIRE, CHARLENE FAIRCHILD
and JOHN DOES A,B,C**                                **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on Motion to Remand **[#10]** filed on behalf of the plaintiff.  The court, having reviewed the motion, the response, the pleadings and exhibits on file and being otherwise fully advised in the premises finds that the motion is not well taken and should be denied.  The court specifically finds as follows:

**FACTUAL BACKGROUND**

On August 18, 2010, Donald filed her Complaint in the Circuit Court of Jones County, Mississippi, Second Judicial District, against Arrowood Indemnity Company, ("Arrowood"), Genex Services, Inc., ("Genex"), National Healthcare Resources, Inc., ("NHR"), Kimberly Wiltshire, Charlene Fairchild and John Does A, B, C.  The crux of Donald's Complaint relates to bad faith denial of workers' compensation benefits for an injury she sustained at work on May 18, 2001.

Defendants Arrowood, Genex and NHR were served on August 19, 2010. Defendant Fairchild was served on August 26, 2010. Defendant Wiltshire was served on August 22, 2010, but was subsequently dismissed without prejudice by Donald on September 15, 2010, after learning that the wrong Kimberly Wiltshire was served.

Thirty days after the first Defendant was served was September 18th which was a Saturday. Therefore, according to the plaintiff, September 20th was the last day for the Defendants to file for removal and have all Defendants join in the Removal. Genex filed its Notice of Removal on September 20, 2010, asserting diversity jurisdiction, 28 U.S.C. § 1332, alleging that Defendant Fairchild is fraudulently joined to defeat diversity jurisdiction.

On the date of removal, there were four Defendants in the lawsuit that had been served, Genex, NHR, Arrowood and Fairchild. Attached as Exhibit B to Genex's Notice of Removal was the Joinder of NHR and purported Joinder of Arrowood. On September 21, 2010, Arrowood filed another joinder in the removal. Defendant Fairchild did not join in the removal, and she filed her answer to the Complaint on September 27, 2010. The Plaintiff filed her motion to remand on October 6, 2010.

## STANDARD OF REVIEW - REMAND

The Fifth Circuit has consistently held that the party urging jurisdiction upon the district court bears the burden of demonstrating that the case is one which is properly before that Court. *See Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Village Fair Shopping Co. v. Sam Broadhead Trust*, 588 F.2d 431 (5th Cir. 1979); *Ray v. Bird & Son and Asset Realization Co., Inc.*, 519 F.2d 1081 (5th Cir. 1975). Even though this court has a limited jurisdiction whose scope is defined by the constitution and by

2

statute, "[w]hen a federal court is properly appealed to in a case over which it has, by law, jurisdiction, 'it has a duty to take such jurisdiction.'" *England v. Louisiana Medical Examiners,* 375 U.S. 411, 84 S. Ct. 461, 11 L.Ed.2d 440, 445 (1964) (other citations omitted).  Chief Justice Marshall wrote in *Cohens v. Virginia*, 19 U.S. 264, 5 L.Ed. 257, 291 (1821), "It is true that this court will not take jurisdiction if it should not; but it is equally true, that it must take jurisdiction if it should."

**<u>Improper Joinder</u>**

"The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one.*"  B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). "The removing party must show either that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts."  *Id.* at 549; (*citing Keating v. Shell Chemical Co.*, 610 F.2d 328 (5th Cir. 1980); *Tedder v. F.M.C. Corp. et al*, 590 F.2d 115 (5th Cir. 1979); *Bobby Jones Garden Apts. v. Suleski*, 391 F.2d 172 (5th Cir. 1968); *Parks v. New York Times Co.*, 308 F.2d 474 (5th Cir. 1962)(*cert. denied*, 376 U.S. 949, 84 S. Ct. 964, 11 L. Ed. 2d 969 (1964))).  This court must refer to the allegations made in the original pleading to determine whether the plaintiff can make out a viable claim against the resident defendant.  *See Tedder v. F.M.C. Corp.*, 590 F.2d at 116; and *Gray v. U. S. Fidelity and Guaranty Co.*, 646 F. Supp. 27, 29 (S.D. Miss. 1986).  Those allegations must be construed most favorably to the plaintiff as the party opposing removal, resolving all contested issues of fact and ambiguities in the law in favor of the plaintiff.  *B. Inc.*, 663 F.2d at 549.  *See also, Bobby Jones Garden Apts.*, 391 F.2d at 177; and *Carrier v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990).

When considering whether a non-diverse defendant has been fraudulently joined to defeat diversity of citizenship jurisdiction, courts may "pierce the pleadings" and consider "summary judgment-type" evidence such as affidavits and deposition testimony. *See Cavallini v. State Farms Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995). Conclusory or generic allegations of wrongdoing on the part of the non-diverse defendant are not sufficient to show that a defendant was not fraudulently joined. See *Badon v. RJR Nabisco, Inc.* 224 F.3d 382, 392-93 (5th Cir. 2000); and *Peters v. Metropolitan Life Ins. Co.*, 164 F.Supp.2d 830, 834 (S.D. Miss. 2001). Removal is proper if the plaintiff's pleading is pierced, and it is shown that as a matter of law there is no reasonable basis for predicting that the plaintiff might establish liability on that claim against the in-state defendant. *Badon*, 224 F.3d at 390.

Regarding piercing the pleadings in an improper joinder case, the Fifth Circuit has held that

> A court may resolve the issue in one of two ways. The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

*Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)(*en banc*)(internal footnotes omitted)(*cert. den.* 125 S.Ct. 1825, 73 USLW 3372 , 73 USLW 3612 , 73 USLW 3621 (U.S. Apr 18, 2005) (NO. 04-831)). However, the Fifth Circuit went on to caution,

> While the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court, we caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant. We

4

emphasize that any piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.

*Id.* at 573-74 (internal footnotes omitted).

## ANALYSIS

Plaintiff first asserts that the Defendants failed to properly remove this action from state court. The Joinder of NHR was physically (not electronically) signed by William W. McKinley, Jr., attorney for NHR. The Joinder of Arrowood was electronically signed by C. Paige Herring, attorney for Arrowood. The plaintiff contends that this electronic signature is a fatal flaw in the Joinder of Arrowood and therefore results in ineffective removal of this action. Twenty-eight U.S.C. § 1446(b) provides:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant whichever period is shorter.
>
> If the case stated by the initial pleading is not removal, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by § 1332 of this title more than one year after commencement of the action.

Donald argues that there are four procedural deficiencies which defeat removal in this action. The only one of substance which requires analysis is the first, wherein

she contends that the signature on Arrowood's Joinder which was attached as Exhibit B to the Notice of Removal was an invalid electronic signature.

According to the Uniform District Court Rules for the Northern & Southern Districts of Mississippi, Rule 5(c), the Federal Rules of Civil Procedure authorizes the district courts to establish practices and procedures for electronically filing, signing and verifying documents. The Southern District of Mississippi has implemented *Administrative Procedures for Electronic Case Filing* to prescribe the procedures and standards governing electronically filing, signing and verifying documents. Section 3(B) of the *Administrative Procedures for Electronic Case Filing* deals with Filing a Civil Complaint or Notice of Removal. Section 3(B)(2) states that a Notice of Removal shall be filed in the manner described above, *i.e.* (B1) for civil complaints. Section 3(B)(1) prohibits electronic filing of initial Civil Complaints and, thus, Notices of Removal.

Therefore, Donald argues that the only way that Arrowood's Joinder attached to the Notice of the Removal would have been proper would have been if it had an original signature. She then asserts the Defendants cannot show strict compliance with 28 U.S.C. § 1446 as they are required to do. *See Spillers v. Tillman*, 959 F. Supp. 364, 368 (S.D. Miss. 1997). Therefore, according to Donald, the electronic signature of Arrowood's attorney on the Joinder of Arrowood was prohibited by the court's rules, and an original signature was required since it was attached to and a part of the Notice of Removal.

The Notice of Removal was properly filed with the required original signature of at least one of the attorneys of record in accordance with 28 U.S.C. § 1446(a) and Rule 11, Federal Rules of Civil Procedure. The Defendants nor the court have been able to locate any rule or authority for the unusual proposition asserted by Donald that a joinder in a Notice of Removal must contain an original signature as opposed to an electronic

6

one. Indeed, the Fifth Circuit has held that for there to be a proper joinder in a removal, "there must be some timely filed written indication from each served defendant, or from some person or entity purporting to act upon its behalf in this respect and to have authority to do so, that it actually consented to such action." *See Getty Oil Corp., a Div. of Texaco, Inc. v. Insurance Co. of North America*, 841 F/2d 1254, 1262 n. 11 (5th Cir. 1988). The court finds that the electronic signature of Arrowood's attorney affixed to the joinder in the Notice of Removal did not render its assent to removal defective. This case was properly removed procedurally and is before the court for a determination of jurisdictional issues related to the alleged improper joinder of Defendant Fairchild.

The Defendants do not contend that there is outright fraud in the plaintiff's pleadings but only that there is no reasonable basis upon which Donald can recover against Fairchild in state court. Donald's argument in favor of remand is that a cognizable cause of action exists against the non-diverse defendant, Fairchild, in that she personally was involved in the alleged mishandling of Donald's workers' compensation claim.

In order for the individual defendant Fairchild to ultimately be liable to Donald, she must show that Fairchild personally acted grossly negligent, with malice, or with reckless disregard for Donald's rights. *Bass v. California Life Ins. Co.*, 581 So.2d 1087, 1090 (Miss. 1991); *Dunn v. State Farm Fire & Cas. Co.*, 711 F.Supp. 1359, 1361 (N.D. Miss. 1987). As the Mississippi Supreme Court stated in *Bass*:

> The relationship between an adjuster and the insured is a purely contractual one. The adjuster does not owe the insured a fiduciary duty nor a duty to act in good faith, as the plaintiff claims.... An adjuster has a duty to investigate all relevant information and must make a realistic evaluation of a claim.... However, an adjuster is not liable for simple negligence in adjusting a claim.... He can only incur independent liability when his conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured.

7

*Bass*, 581 So.2d at 1090 (quoting *Dunn*, 711 F.Supp. at 1361) (citations omitted). The same standard applies to Fairchild who was not an adjuster on Donald's claim but is alleged to have interfered with or mishandled the claim.

Fairchild was a nurse case manager to Donald during her treatment for her work related injury. The Complaint alleges that the Defendants, including Fairchild, consistently and stubbornly failed and refused to fulfill their obligations to Donald. According to Donald, these sweeping generalizations of "defendants" can be read to constitute allegations of direct, personal interference by Fairchild in Donald's medical treatment. The Complaint also alleges that Fairchild caused injury to Donald by wrongfully interfering with and impeding Donald's medical care and by disregarding Donald's physicians' orders and recommendations.

Further, Donald's Complaint specifically alleges that Fairchild personally misled Donald by telling her that treatment would be provided to the right knee after the left knee was treated and to not mention the right knee to her physicians. Donald contends it is because of such conduct that she alleges intentional infliction of emotional distress, negligent infliction of emotional distress, breach of fiduciary duty, breach of duty of good faith and fair dealing and civil conspiracy against Fairchild.

Donald asserts that after her injury she was referred to Dr. Turnbull, whom she contends "was authorized by Defendants to only treat the left knee." She further alleges that Dr. Turnbull referred her to Dr. Ross Ward, that Dr. Ward referred her to Dr. Rouse, but that she ultimately saw Dr. Michael Dulske, whom she also contends was only authorized to treat her left knee.

Donald alleges she "reached maximum medical improvement as to her left knee on November 21, 2002, and was given an impairment rating of 15% to the left lower extremity per Dr. Dulske." Donald then alleges that "[u]pon reaching maximum medical

8

improvement by Dr. Dulske, [she] requested treatment for her right knee injury from Defendants, who each wrongfully denied treatment." Donald then asserts that she "employed legal counsel and a Petition to Controvert was filed on May 27, 2003, with the Mississippi Workers' Compensation Commission alleging injuries to both knees."

In apparent support of these efforts, Donald alleges that Dr. Dulske provided a letter stating that her right knee complaints were related to the original work injury on March 26, 2004. Additionally, Donald states that Dr. Ward testified by way of deposition that her right patella problems were caused by the work accident. She contends that in the "face of this evidence" Defendants continued to deny treatment for her right knee, and she "had no choice" but to file a Motion to Compel Medical Treatment & TTD Benefits (the "Motion to Compel Medical Treatment") on December 9, 2004.

Pursuant to the Motion to Compel Medical Treatment, the Administrative Judge entered an order on August 11, 2005 (the "August 2005 Order") which granted Donald's request for treatment to her right knee. After numerous appeal proceedings, the compensability issues related to the right knee were finally resolved in Donald's favor by final order of the Mississippi Workers Compensation Commission on December 10, 2009. However, Donald alleges further that "[e]ven following the Full Commission Order to submit payment for all of [her] injuries, including the right knee, Arrowood continued to wrongfully delay and avoid payments owed to [her]."

The Defendants have provided an Affidavit from Defendant Fairchild which relates her brief involvement with Donald. Therein, Fairchild discloses that she is a licensed registered nurse in the State of Mississippi, that she provided "case management services" regarding the Plaintiff, and that she "prepared the reports which are attached to [her] Affidavit for [her] employer who was hired by the workers' compensation insurance carrier identified on [her] reports as Royal and SunAlliance."

9

According to Fairchild, her "sole responsibility was . . . to coordinate the provision of medical services provided to Darlene Donald." Fairchild attests that she "had no involvement or input with respect to the claims handling or any decision on whether to provide or pay for workers' compensation benefits which are the subject of the Complaint filed against [her]."

Donald's Complaint contains numerous allegations concerning her worker's compensation claim, which span over eight years beginning with her accident in May 2001 and culminating in an allegation that "[t]he Full Commission entered its Order on December 10, 2009 affirming the ruling of the Administrative Judge on all points relevant [therein]." *See* Plaintiff's Complaint at 3-6. However, the reports attached to Fairchild's Affidavit discussing Donald's treatment, which were prepared by Fairchild, are dated May 1, 2002, May 31, 2002, July 5, 2002, July 25, 2002, August 18, 2002, and November 11, 2002. Fairchild had no contact with Donald since she last provided case management services regarding her care in November 2002.

Also before the court is the affidavit of Connie Prigmore ("Prigmore"), who was the adjuster on Donald's worker's compensation case. According to Prigmore, a number of persons were assigned as case management nurses to Donald's case. These case management nurses were all employed by either Concentra or NHR. One of these nurses was Fairchild, whose involvement with Donald began on or about May 22, 2002 and ended around November 2002. Prigmore's description of Fairchild's duties is consistent with how they are described by Fairchild:

> 5    The duties of the nurse case managers are to coordinate medical treatment. They are to set appointments and to work with the doctors and patients and to make sure those appointments are kept and that they are properly [sic] and that treatment progresses routinely.
>
> 6.    The nurse case managers do not have any authority when it comes to making coverage or benefit determinations. Additionally, Ms.

> Fairchild would not have any input with regard to claims handling or payment activities nor would she have had authority to confirm that certain treatments would be paid, were reasonable and/or necessary, or the relationship of injuries to any occurrence. In short, [Fairchild] had no decision-making capacity for any of the claims that are the subject of the [Complaint] originally filed by [Plaintiff] against Arrowood Indemnity Company in the Circuit Court of Jones County, Second Judicial District.

(Doc. 14-4 at 2)

As clearly stated in *Cranston v. Mariner Healthcare Management Co.*, 2003 WL 21517999 (N.D.Miss. 2003), a plaintiff cannot rely upon general, conclusory, and/or collective allegations against defendants in opposing a claim of improper joinder:

> Here, the Plaintiffs merely allege, in very general and conclusory terms, that the Defendants collectively engaged in tortious conduct. There are no specific factual allegations in the complaint concerning the individual Defendant Dolores Goode's participation in any of the alleged tortious acts, much less any factual allegations that would tend to suggest that her involvement was anything other than merely peripheral. Instead, the Plaintiffs simply allege in very general terms that the Defendants, as a group, will face liability for their actions. Nowhere in the complaint do the Plaintiffs allege how Goode directly participated in or authorized the commission of a tort, or how Goode's alleged liability is based on her own individual wrongdoing; instead, the Plaintiffs merely use boilerplate language that collectively implicates the Defendants. As the court has already noted, hypothetical allegations of this sort are plainly deficient.

2003 WL 21517999 (citing *Addison v. Allstate Ins. Co.*, 58 F.Supp.2d 729, 732-33 (S.D.Miss. 1999).

The focus of this inquiry must be on the factual allegations specific to Fairchild; Donald cannot rely upon the numerous, collective allegations of "Defendants'" wrongdoing.  The substantive allegations against Fairchild appear in the Complaint on page 3:

> Defendants Wiltshire and Fairchild instructed Donald to allow them to discuss Donald's treatment with her physicians and continually told Donald to have her left knee complaint resolved and then the right knee would be treated. Both Wiltshire and Fairchild instructed Donald not to discuss the right knee problems with her physicians and by doing so Wiltshire, Fairchild and NHR wrongfully  interfered with Donald's treatment.

11

(Plaintiff's Complaint at 3)

Donald did not allege that Fairchild was aware, or should have been aware, that Arrowood allegedly did not intend to provide treatment for the right knee after the left knee had been treated. Nor did Donald allege that treating one knee at a time was an improper course of treatment.

The facts set forth in the affidavits of Fairchild and Prigmore concerning her role in connection with Donald's case are undisputed. Fairchild's sole duty was to coordinate medical treatment, *i.e.* set up appointments, make sure that those appointments are kept, and that treatments progress routinely. Fairchild had no authority to make coverage or benefit determinations. She had no input with regard to claims handling or payment activities. She had no authority to confirm that certain treatments would be paid, were reasonable, or necessary. She had no authority to confirm any relationship of injuries to any occurrence. Fairchild simply had no decision-making capacity for any of the claims asserted in Donald's Complaint.

In *Gallagher Bassett Services, Inc. v. Jeffcoat*, 887 So. 2d 777, 784 (Miss. 2004), the Mississippi Supreme Court reiterated that an insurance adjuster, agent, or other similar entity may not be held independently liable for simple negligence in connection with its work on a claims. Such an entity may be held independently liable for its work on a claim if and only if its acts amount to gross negligence, malice, or reckless disregard for the rights of the insured. *Id.* Given the record before the court, Donald simply cannot demonstrate that Fairchild is guilty of any such conduct.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion to Remand **[#10]** filed on behalf of the plaintiff, Darlene S. Donald, is denied and that Charlene Fairchild is hereby dismissed with prejudice as being improperly joined.

IT IS FURTHER ORDERED AND ADJUDGED that the stay previously imposed

in this matter is lifted and that the parties shall contact Judge Parker within ten days of this order for the entry of a Case Management Order.

 SO ORDERED AND ADJUDGED this the 23rd day of November, 2010.

          *s/Keith Starrett*
          UNITED STATES DISTRICT JUDGE